UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSE NAVARRO MARTINEZ, | CASE NO. 2:26-cv-00032-JNW |
| Petitioner, | ORDER GRANTING IN PART PETITION FOR HABEAS CORPUS |
| v. | |
| ICE FIELD OFFICE DIRECTOR, | |
| Respondent. | |

## 1. INTRODUCTION

This matter comes before the Court on Petitioner José Navarro Martinez's petition for writ of habeas corpus. Dkt. No. 3. Having reviewed the petition, the return, Dkt. No. 6, the traverse, Dkt. No. 10, and the relevant record, the Court GRANTS the petition IN PART.

## 2. BACKGROUND

Petitioner José Navarro Martinez is a 32-year-old Cuban national. Dkt. No. 8-1; Dkt. No. 10 at 2. On July 6, 2022, he was apprehended by Border Patrol near Eagle Pass, Texas, attempting to enter the United States. Dkt. No. 8-1. The following day, he was paroled into the United States due to detention capacity and

ORDER GRANTING IN PART PETITION FOR HABEAS CORPUS - 1

was eventually released from custody with instructions to report to the U.S. Immigration and Customs Enforcement (ICE) Office of Enforcement and Removal Operations ("ERO") for enrollment into the Alternatives to Detention ("ATD") program. Dkt. No. 7 ¶ 6; Dkt. No 8-2. Upon reporting to ERO, Petitioner was "removed from the ATD program as he was no longer required to participate. Dkt. No. 7 ¶ 7. About a year after his parole, Petitioner filed an application for relief from removal with U.S. Citizenship and Immigration Services. Dkt. No. 7 ¶ 8.

On April 30, 2024, Petitioner was arrested in Miami, Florida, on state criminal charges that remaining pending. Dkt. No. 8-5 at 3; Dkt. No. 7 ¶ 9. ERO issued a Notice to Appear ("NTA") under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act, Dkt. No. 8-3. ICE then issued a warrant for his arrest, Dkt. No. 8-4, and took Petitioner into custody on May 7, 2024. Dkt. No. 8-5.

While in custody, Petitioner allegedly (1) appeared in immigration court and conceded the charge of removability, and (2) filed an asylum application and an application to register permanent residence with the Executive Office for Immigration Review ("EOIR"). Dkt. No. 7 ¶¶ 13, 14.

On March 6, 2025—ten months after being taken into ICE custody—both Petitioner and his removal proceedings were transferred from Florida to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 7 ¶ 15. On November 3, 2025, a Tacoma Immigration Judge ("IJ") denied his applications for asylum and adjustment of status, and ordered that he be removed to Cuba. Dkt. No. 8-6. Petitioner timely appealed the IJ's order to the Board of

ORDER GRANTING IN PART PETITION FOR HABEAS CORPUS - 2

Immigration Appeals (BIA), where it remains pending. Dkt. No. 7 ¶ 17. As of the date of Respondent's return, no briefing schedule had been issued by the BIA. Id.

## 3.  DISCUSSION

### 3.1    Legal standard.

Because Petitioner proceeds without counsel, the Court construes his filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). To succeed on his habeas petition, Petitioner must show he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### 3.2    Petitioner is not entitled to release under *Zadvydas.*

Petitioner argues that his prolonged detention entitles him to release under *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas v. Davis*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. 533 U.S. 678, 699 (2001). Applying the doctrine of constitutional avoidance, the Court concluded that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

ORDER GRANTING IN PART PETITION FOR HABEAS CORPUS - 3

But *Zadvydas* only "when [a noncitizen] has been found to be unlawfully present in the United States *and a final order of removal has been entered. . .*" 533 U.S. at 682 (emphasis added). Petitioner's removal order is currently on appeal before the BIA and therefore not considered final. See 8 U.S.C. § 1101(a)(47)(B) (an order of deportation "shall become final" upon a determination by the BIA affirming the order); *see also Ocampo v. Holder*, 629 F.3d 923, 927 (9th Cir. 2010); *Harris v. Herrey*, No. CIV.A. 13-4365 KM, 2013 WL 3884191, at *1 (D.N.J. July 26, 2013) ("Because [petitioner's] appeal is still pending before the BIA, his order of removal is not final."). Accordingly, Petitioner's request for release under *Zadvydas* is DENIED.

### 3.3   Petitioner is entitled to an individualized bond hearing under *Banda*.

Respondent asserts that Petitioner is detained under 8 U.S.C. § 1225(b). Dkt. No. 6 at 2. While detention is mandated under Section 1225(b), the courts have "grappled … with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." *Rodriguez v. Robbins*, 804 F.3d 1060, 1067 (9th Cir. 2015), *rev'd sub nom. Jennings v. Rodriguez*, 583 U.S. 281 (2018).

Neither the Supreme Court nor the Ninth Circuit has settled on a test for assessing the constitutionality of prolonged mandatory detention. *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019). Consequently, "[d]istrict courts have grappled with how to address due process challenges to prolonged

mandatory detention[.]" *Id.* And "[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Id.* (quotation modified).

In assessing the constitutionality of prolonged mandatory detention, the court in *Banda* declined to apply the test in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), because the test does "not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided." *Banda*, 385 F. Supp. 3d at 1106–07. Instead, the court conducted a case-specific analysis considering the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* at 1117 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)). Courts in this district have now adopted the "Banda test" to assess when detention violates due process. *See, e.g., Toktosunov v. Wamsley*, No. 2:25-cv-1724-TL, 2025 WL 3492858, at *4–7 (W.D. Wash. Dec. 5, 2025); *Belqasim v. Hermosillo*, No. 2:25-cv-1282-LK, 2025 WL 3466971, at *7–10 (W.D. Wash. Oct. 28, 2025), *report and recommendation adopted*, 2025 WL 3170929 (W.D. Wash. Nov. 13, 2025); *Maliwa v. Scott*, No. 2:25-cv-0788-TMC, 2025 WL 2256711, at *3–4 (W.D. Wash. Aug. 7, 2025); *Hong v. Mayorkas*, No. 2:20-cv-1784-LK, 2022 WL 1078627, at *4–5 (W.D. Wash. Apr. 11, 2022). Respondents acknowledge that courts in this District analyze this issue using the *Banda* multi-factor test, Dkt. 6 at 6–7, and the Court

will likewise apply it here to determine whether Respondents have met their burden of proving that Petitioner's continued detention without a bond hearing is justified.

### 3.3.1    Length of detention.

"[T]he most important factor" under the *Banda* test is the length of detention. *Banda*, 385 F. Supp. 3d at 1118. The "context" of a petitioner's circumstances is crucial to keep in mind, particularly that "[t]he detention that is being examined here is the detention of a human being who has never been found to pose a danger to the community or to be likely to flee if released." *Jamal A.*, 358 F. Supp. 3d at 859. "The longer mandatory detention continues ... the harder it is to justify." *Murillo-Chavez v. Garland*, No. 2:22-cv-0303-LK, 2022 WL 16555994, at *5 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 16553176 (W.D. Wash. Oct. 31, 2022).

Petitioner has been detained since May 7, 2024—over twenty months as of the date of this order. Courts in this district have found that similar or shorter spans of detention favor the detainee. *See Murillo-Chavez v. Garland*, No. 2:22-cv-0303-LK, 2022 WL 16555994, at *5 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 16553176 (W.D. Wash. Oct. 31, 2022) (collecting cases). This "most important" factor undoubtedly favors Petitioner.

### 3.3.2    Likely duration of future detention.

The second factor requires consideration of "how long the detention is likely to continue absent judicial intervention; in other words, the 'anticipated duration of

all removal proceedings—including administrative and judicial appeals.'" *Banda*, 385 F. Supp. 3d at 1119 (quoting *Jamal A.*, 358 F. Supp. at 859). In *Banda*, the Court noted that if the BIA were to affirm the petitioner's removal order, the petitioner could then seek review in the Ninth Circuit, which might "take up to two years or longer." 385 F. Supp. 3d at 1119 (citation omitted). That prospect favored granting the petitioner a bond hearing. *Id.*; *see also Hong*, 2022 WL 1078627, at *7 (noting that appeals in the Ninth Circuit typically pend for twelve to twenty months before argument and then an additional three months to a year before decision, and finding the factor favors petitioner).

As discussed above, Petitioner has appealed his removal order to the BIA, where the appeal remains pending. Respondents argues that the anticipated length of future detention is speculative, Dkt. No. 6 at 7, but the lack of a briefing schedule and the realistic prospect of further appellate proceedings point toward continued and significant detention absent judicial intervention. The second factor weighs in favor of petitioner.

### 3.3.3    The conditions of detention.

Next, the Court considers the conditions of detention. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). Courts have recognized that the conditions at NWIPC are "similar ... to those in many prisons and jails." *See Jennings v. Rodriguez*, 583 U.S. 281, 329 (2018) (Breyer, J., dissenting); *Amhirra v. Warden*,

No. 2:25-cv-1376-TL, 2025 WL 3718994, at *7 (W.D. Wash. Dec. 23, 2025); *Toktosunov*, 2025 WL 3492858, at *5; *Rahman*, 2025 WL 1920341, at *4 (citing cases). The Court finds the third *Banda* factor favors Petitioner.

### 3.3.4    Delays in removal proceedings by Petitioner and Respondents.

The fourth and fifth factors consider the nature and extent of any delays in the removal proceedings caused by Petitioner and the Government, respectively. "Petitioner is entitled to raise legitimate defenses to removal ... and such challenges to his removal cannot undermine his claim that detention has become unreasonable." *Martinez v. Clark*, No. 2:18-cv-1669-RAJ, 2019 WL 5968089, at *10 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019). Courts, however, should be "sensitive to the possibility that dilatory tactics by the removable [noncitizen] may serve not only to put off the final day of deportation, but also to compel a determination that the [noncitizen] must be released because of the length of his incarceration." *Id*.

With respect to the Government, "If immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable .... Continued detention will also appear more unreasonable when the delay in the proceedings was caused by the immigration court or other non-ICE government officials." *Sajous v. Decker*, No. 18-2447, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018).

Here, there is no indication in any of the filings before the Court that either Petitioner or Respondents caused any delays in the proceedings. Thus, the Court finds that fourth factor favors Petitioner, while the fifth factor favors Respondents.

### 3.3.5    Likelihood of final order of removal.

Under the sixth factor, the Court considers the likelihood that the removal proceedings will result in a final order of removal. *Banda*, 385 F. Supp. 3d at 1120 (citation omitted). Here, Respondents argue that Petitioner has "conceded his charge of removability" and thus the factor should weigh in their favor. However, this concession is not apparent from the record before the Court and is based solely on the Reed declaration. Dkt. No. 7 ¶ 13. There is no record of Petitioner's July 15, 2024, appearance in immigration court where he is alleged to have "conceded the charge of removability." Accordingly, the finds the sixth *Banda* factor to be neutral.

### 3.3.6    Weighing the factors.

In sum, four of the six *Banda* factors, including the critical first factor, weigh in favor of granting Petitioner a bond hearing. Only one of the factors weigh in favor of Respondents. And only one factor is neutral. Since four of the *Banda* factors clearly favor Petitioner, the Court concludes that the *Banda* test, on balance, favors Petitioner, and that his "continued mandatory detention under § 1225(b) has become unreasonable and that due process requires the Government to provide him with a bond hearing." *Banda*, 385 F. Supp. 3d at 1120.

### 3.3.7    Appropriate relief.

Having found that Petitioner's detention has become unreasonable, the Court concludes that the proper remedy in this instance is a bond hearing that comports with the requirements of *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011) (clarifying that "the government should be held to a clear and convincing evidence

standard of proof" in a bond hearing). The Court therefore GRANTS the petition as it relates to an individualized bond hearing.

### 3.4    Third-country removal.

Petitioner finally requests that the Court prohibit Respondents from removing him to a third country, i.e., a country other than Cuba, without first providing him with notice or opportunity to respond. Dkt. No. 10 at 1. However, Respondents claim that should Petitioner be removed, he will be removed to Cuba. Dkt. No. 7 ¶ 18. While the Court shares Petitioner's skepticism as to that claim, it is not apparent that his deportation to a third country is imminent or even threatened. Therefore, the Court DENIES the petition as it relates to third-country removal.

## 4.  CONCLUSION

Accordingly, the Court finds and orders the following:

1.  The Petition for a Writ of Habeas Corpus is GRANTED IN PART. Dkt. No. 1.

2.  Petitioner's prolonged detention under 8 U.S.C. § 1225(b) without a bond hearing violates the Due Process Clause of the Fifth Amendment.

3.  Within FOURTEEN (14) days of this order, Respondents must provide Petitioner with an individualized bond hearing that complies with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). In the event that bond is granted, Respondent is ORDERED to immediately release Petitioner.

4. If the individualized bond hearing is not conducted within fourteen days of this order, Petitioner MUST be released immediately under appropriate conditions of supervised release.

5. Petitioner and Respondents MUST file a status report on the status of Petitioner's bond hearing no later than FIFTEEN (15) days from this order. The status report MUST detail if and when the bond hearing occurred, if bond was granted or denied and, if denied, the reasons for that denial.

6. The Petition is DENIED in all other respects.

Dated this 2nd day of March, 2026.

Jamal N. Whitehead
United States District Judge

ORDER GRANTING IN PART PETITION FOR HABEAS CORPUS - 11