UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSE NAVARRO MARTINEZ,<br><br>Petitioner,<br><br>v.<br><br>ICE FIELD OFFICE DIRECTOR and BRUCE SCOTT, Warden of Northwest ICE Processing Center,<br><br>Respondents. | CASE NO. 2:26-cv-00032-JNW<br><br>ORDER GRANTING MOTION TO ENFORCE |

This matter comes before the Court on Petitioner Jose Navarro Martinez's motion to enforce the Court's partial grant of his petition for a writ of habeas corpus. Dkt. No. 15. Having reviewed the motion, the parties' briefing, and the relevant record, the Court GRANTS the motion.

## 1. BACKGROUND

The factual background of this case is set out in detail in the Court's prior order, Dkt. No. 12. The Court recounts here only the facts relevant to Navarro Martinez's motion to enforce.

Navarro Martinez is a 32-year-old Cuban national, who entered the country in July 2022, and presented himself to Border Patrol. Dkt. No. 16-1 ¶¶ 1–2. Soon after, he was paroled and released from Department of Homeland Security's (DHS) custody with instructions to report to U.S. Immigration and Customs Enforcement (ICE) Office of Enforcement and Removal Operations (ERO). *Id.* ¶ 2; Dkt. No. 7 ¶ 6. Navarro Martinez filed an asylum application with U.S. Citizenship and Immigration Services (USCIS) within one year of entering the country. Dkt. No. 16-2 at 2. He also attended ICE check-ins and reported his address changes as instructed. Dkt. No. 16-1 ¶¶ 3–5.

On May 1, 2024, Navarro Martinez was arrested on state prostitution-related charges. Dkt. No. 16-1 ¶ 7. He has consistently maintained his innocence, and the charges were ultimately dismissed. *Id.* ¶ 8.

On May 7, 2024, ICE served Navarro Martinez with a Notice to Appear (NTA) and took him into custody where he has remained for over two years as of the date of this order. Dkt. Nos. 7 ¶ 11; 8-5 at 1–4. On November 3, 2025, an IJ denied Navarro Martinez's applications for adjustment of status and asylum. Dkt. No. 16-1 ¶ 10. Through counsel, he appealed the denial to the Board of Immigration Appeals (BIA), where it remains pending. *Id.* His removal order thus is not final.

Navarro Martinez filed a pro se petition for a writ of habeas corpus on January 7, 2026, arguing that his prolonged detention entitled him to release under *Zadvydas v. Davis*, 533 U.S. 678 (2001). Dkt. No. 3. On March 2, 2026, the Court granted in part Navarro Martinez's habeas petition and found that his prolonged detention under 8 U.S.C. § 1225(b) without a bond hearing violated the Due Process

Clause of the Fifth Amendment. Dkt. No. 12. The Court ordered Respondents to provide Navarro Martinez an individualized bond hearing that complied with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). *Id.* at 9.

On March 16, 2026, an IJ held a bond hearing and ruled that DHS provided clear and convincing evidence that Navarro Martinez presented a flight risk. Dkt. No. 16-3 at 2–6. The IJ issued a written decision explaining the bond denial on March 31, 2026. *Id.* Navarro Martinez argues that the IJ misapplied the clear and convincing standard, and thus failed to conduct failed to conduct a constitutionally sufficient bond hearing as ordered by this Court. Dkt. No. 15 at 7. Respondents argue that the Court should require prudential exhaustion, and that the record provides a rational basis for the IJ to find—by clear and convincing evidence—that Navarro Martinez presents a flight risk. Dkt. No. 19 at 3–9.

After briefing on the motion closed, the Court directed Navarro Martinez—who filed his original petition pro se—to name his custodian as respondent. Dkt. No. 24. He filed an amended petition naming Bruce Scott, Warden of NWIPC, on June 16, 2026. Dkt. No. 25.

## 2. DISCUSSION

### 2.1 The Court has subject matter jurisdiction.

Respondents argue that the Court lacks jurisdiction because Navarro Martinez failed to name his custodian—the warden of the Northwest ICE Processing Center (NWIPC)—in his habeas petition. Dkt. No. 19 at 3. The Court addressed this argument in a minute order, finding that Navarro Martinez's failure

to name the correct respondent caused a defect in personal jurisdiction but not subject-matter jurisdiction. Dkt. No. 24 at 2 (citing *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 894 (9th Cir. 1996)). As per the Court's order, Navarro Martinez submitted an amended petition naming Bruce Scott, Warden of NWIPC, and Respondents declined to file an amended return. Dkt. No. 25.

Respondents rely on *Doe v. Garland*, 109 F.4th 1188 (9th Cir. 2024), for the rule that a habeas petitioner must name his immediate custodian. Dkt. No. 19 at 3. That rule is not in dispute. What follows from an initial failure to name the custodian is a curable defect in personal jurisdiction, which is what the Court found, and what the amended petition fixed. Respondents cite nothing holding that the omission strips the Court of subject-matter jurisdiction or bars amendment.

**2.2 The Court waives the prudential exhaustion requirement.**

In immigration habeas cases, administrative exhaustion is prudential, not jurisdictional. *See W.T.M. v. Bondi*, No. 25-cv-2428, 2026 WL 262583, at *2 (W.D. Wash. Jan. 30, 2026) (citing *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017)). Prudential exhaustion is favored when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). Even when the *Puga* factors are met, the Court may waive prudential exhaustion if: (i) the administrative remedies are

"inadequate or not efficacious," (ii) "pursuit of administrative remedies would be a futile gesture," (iii) "irreparable injury" might result, or (iv) "the administrative proceedings would be void." *See Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000–01 (9th Cir. 2004)).

The *Puga* factors do not require exhaustion here. On the first factor, Navarro Martinez raises a constitutional challenge to the adequacy of his bond hearing, a claim well suited for federal court review. *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011). Respondents argue that Navarro Martinez's argument "is not a constitutional error outside of the jurisdiction of the BIA." Dkt. No. 19 at 4. But whether, as a matter of law, the facts can sustain a finding of flight risk requires no agency expertise.

On the second factor, Navarro Martinez raises a legal question whose resolution will provide concrete guidance to the immigration court: whether unlawful entry and speculation about available relief is clear and convincing evidence of flight risk. Such guidance may reduce the need for future habeas petitions. *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1251 (W.D. Wash. 2025) (finding exhaustion unnecessary where the petition "seeks resolution of a legal question that will provide concrete guidance for future administrative proceedings."); *Soriano v. Hernandez*, No. 2:26-CV-00900-DGE, 2026 WL 969764, at *4 (W.D. Wash. Apr. 10, 2026) ("There . . . is some value in identifying specific circumstances under which, as a matter of law, a finding of flight risk is untenable.").

On the third factor, Respondents argue that the BIA is perfectly capable of reassessing the IJ's findings without the need for judicial review. Dkt. No. 19 at 5. But this argument overlooks the nature of the claim. Navarro Martinez does not ask the BIA to reconsider a bond decision; he asks this Court whether the government complied with this Court's writ. As the court that issued the writ, this Court retains jurisdiction to decide whether it was obeyed. *See Rose v. Guyer*, 961 F.3d 1238, 1246 (9th Cir. 2020). The BIA cannot construe this Court's order, so its review cannot correct the error Navarro Martinez raises.

Even if the *Puga* factors required exhaustion, Navarro Martinez has carried his burden of showing that a *Laing* exception applies because irreparable injury would result. Government data reflects an average processing time of 204 days for BIA bond appeals. *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1307 (W.D. Wash. 2025). Navarro Martinez has been detained since May 7, 2024. Respondents argue that Navarro Martinez "has not presented unique harm other than what most, if not all, detainees face." Dkt. No. 19 at 6. But requiring him to wait six months or more for BIA review would inflict the kind of harm that the bond hearing was designed to prevent—that is, prolonged detention without meaningful process. *See W.T.M.*, 2026 WL 262583, at *3; *Vasquez Lopez v. Hernandez*, No. C26-0775 TSZ, 2026 WL 984151, at *2 (W.D. Wash. Apr. 13, 2026); *Escalante Perez v. Hernandez*, C26-0956 TSZ, 2026 WL 1004559, at *2 (W.D. Wash. Apr. 14, 2026).

Accordingly, the Court waives any exhaustion requirement.

**2.3 Respondents did not provide the hearing the Court ordered.**

A motion to enforce asks whether Respondents did what the Court's order required. *See Rose*, 961 F.3d at 1246. That order required a bond hearing complying with *Singh*—one at which the government bears the burden of proving, by clear and convincing evidence, that Navarro Martinez is a flight risk or a danger. Dkt. No. 12 at 9–10. The Court therefore asks whether the hearing met that standard, reviewing the IJ's determination for abuse of discretion. It does not reweigh the evidence or decide bond in the first instance. *Martinez v. Clark*, 124 F.4th 775, 784–85 (9th Cir. 2024) (a reviewing court "cannot reweigh evidence" but may "determine whether the [immigration judge] applied the correct legal standard") (citing *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2017)); *Garcia Ortiz v. Henkey*, No. 1:26-cv 00043-BLW, 2026 WL 948275, at *4 (D. Idaho Apr. 7, 2026) (in reviewing discretionary bond determinations, federal district courts are "not required to countenance a sham").

In making bond determinations, IJs consider the *Guerra* factors: (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from

authorities; and (9) the [noncitizen's] manner of entry to the United States. *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).

The parties agree that, at the bond hearing, it was DHS's burden to prove—by clear and convincing evidence—that Navarro Martinez was a flight risk. Clear and convincing evidence is a high bar. "The 'clear and convincing' standard requires the Government to present evidence to establish 'an abiding conviction that the truth of [the] factual contentions at issue is highly probable.' " *N.A. v. Warden, Adelanto Det. Facility*, No. 5:25-CV-03007-CV-MBK, 2026 WL 734587, at *7 (C.D. Cal. Feb. 20, 2026), *report and recommendation adopted*, No. 5:25-CV-03007-CV-MBK, 2026 WL 734585 (C.D. Cal. Mar. 12, 2026) (quoting *Mondaca-Vega v. Lynch*, 808 F.3d 413, 422 (9th Cir. 2015) (en banc)).

The IJ described DHS's evidence herself. "To meet its burden," she wrote, "DHS submitted the Record of Deportable/Inadmissible Alien, Form I-213 and the Decision of the Immigration Judge." Dkt. No. 20-2 at 2. She added that there was "no police report in the record." *Id*. That was DHS's entire case: a form and the November 3 removal order. Dkt. No. 16-5. It offered nothing to show that Navarro Martinez would fail to appear—no missed check-ins, no prior failure to appear, no attempt to flee. *Singh* settles that this is not enough for the Government to meet its burden. There, the Ninth Circuit held that even a final order of removal "alone . . . does not constitute clear and convincing evidence . . . [of] a flight risk justifying denial of bond." *Singh*, 638 F.3d at 1205. Navarro Martinez's order isn't even final; it's on appeal. If a final order alone cannot prove flight risk, a non-final order plus an intake form cannot either.

Navarro Martinez argues that the bond factors listed above show he is not a flight risk. The Court agrees. Navarro Martinez has a history of compliance when released on parole, several letters of community support, and an ongoing BIA appeal. The Court recounts these mitigating facts within the record but does not reweigh the parties' competing evidence about Navarro Martinez's ties, family, or character, and it need not do so to resolve the petition.

The IJ's decision was an abuse of discretion because it overlooks DHS's lack of evidence while discounting Navarro Martinez's, effectively, flipping the burden to Navarro Martinez to prove his is not a flight risk. It also misstates and excludes key facts. *See Franco-Rosendo v. Gonzales*, 454 F.3d 965, 966 (9th Cir. 2006) (finding that the BIA abuses its discretion "when it fails to 'consider and address in its entirety the evidence submitted by petitioner'"); *Soto Gimenez v. Hernandez, et al.,* No. 2:26-cv-00966-GJL, 2026 WL 1156075, at * 8 (W.D. Wash. Apr. 29, 2026) (failure to engage with evidence and absence of articulated reasoning constitutes an abuse of discretion); *Garcia v. Hyde*, No. 25-cv-585-JJM-PAS, 2025 WL 3466312, at * 10 (D.R.I. Dec. 3, 2025) (abuse of discretion to disregard contrary evidence submitted by petitioner that his arrest warrant was inactive).

DHS did not rebut Navarro Martinez's letters of community support, nor did it contest the reliability of his sponsor; specifically, his U.S. citizen cousin who agreed to provide him support and a place to live while released on bond. *See Zarei v. Larose,* No. 26-CV-02335-GPC-MMP, 2026 WL 1415042, at *5 (S.D. Cal. May 19, 2026) ("[While the IJ may consider a sponsor's reliability, . . . [DHS] did not present

any clear or convincing evidence that Petitioner's sponsor was unreliable, such that Petitioner posed a flight risk, throughout the bond hearing.").

The IJ mentions Navarro Martinez's arrest on state criminal charges but does not address the fact that all charges were dismissed. She also restates DHS's unsupported and inaccurate claim that Navarro Martinez failed to file a timely affirmative asylum application—in other words, that he did not file a Form I-539 within one year of entering the United States because he entered in 2022 and filed for asylum in 2024. Navarro Martinez provided as evidence his I-539 receipt notice proving that he did indeed timely file an asylum application with USCIS in June 2023. DHS did not rebut Navarro Martinez's history of compliance with ICE check ins and address updates, nor did it provide any history of immigration violations while in the United States.

The IJ primarily relies on Navarro Martinez's unlawful entry and lack of available relief. One unlawful entry does not automatically establish a flight risk, especially because Navarro Martinez presented himself at the border to request asylum. While the BIA allows IJs to consider the "likelihood that relief from removal will be granted" when deciding bond, *Matter of R-A-V-P*, 27 I.&N. Dec. 803, 805 (B.I.A. 2020), such speculation must be weighed "based on the specific facts presented in a particular case." *Soriano v. Hernandez*, No. 2:26-CV-00900-DGE, 2026 WL 969764, at *5 (W.D. Wash. Apr. 10, 2026). In Navarro Martinez's case, the IJ concludes that "no relief [is] available him" without explanation or support. Navarro Martinez, on the other hand, shows that he has a pending appeal. DHS does not provide any evidence to suggest Navarro Martinez's appeal has been

denied or withdrawn. As a result, the IJ's bond denial does not rationally apply the governing legal standard because the IJ's cited reasons for denying bond conflict with the record and do not stand on their own as a basis to deny bond.

**2.4 Release is the appropriate remedy.**

Federal courts have "a fair amount of flexibility" in fashioning specific habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). The Court ordered Respondents to provide Navarro Martinez with a constitutionally adequate bond hearing, or in the alternative, to immediately release Navarro Martinez under appropriate conditions of release. As discussed above, the bond hearing that was held failed to comply with due process or this Court's prior order, which triggers the alternative.

Because the hearing did not comply, Respondents have not cured the constitutional violation the Court identified. The remedy for that failure is release. *See Harvest v. Castro,* 531 F.3d 737, 741–42 (9th Cir. 2008) (when a court issues a conditional writ and the government does not take the corrective step, "[t]he consequence . . . is always release."). A second hearing is not required—DHS already had its chance to justify his detention and did not. Ordering another round would give DHS a second chance at a burden it has already failed to carry, while Navarro Martinez stays detained. The Court declines to do so and orders his release under appropriate conditions of supervision. *See Tavurov v. Noem*, No. 2:26-cv-00668-TLF, 2026 WL 1283513, at *10 (W.D. Wash. May 11, 2026) (citing *Soriano v.*

*Hernandez*, No. 2:26-cv-00900-DGE, 2026 WL 969764, at *6 (W.D. Wash. Apr. 10, 2026)). Accordingly, the Court orders Navarro Martinez's immediate release.

## 3. CONCLUSION

In sum, the Court ORDERS the following:

1. The Motion to Enforce is GRANTED. Dkt. No. 15.
2. Respondents must release Petitioner from custody, under appropriate conditions of supervision consistent with applicable statutory and regulatory authority, within TWENTY-FOUR (24) hours of this Order.
3. Respondents must file a status report within FORTY-EIGHT (48) hours of this Order, confirming that Petitioner has been released from custody.

Dated this 21st day of July, 2026.

Jamal N. Whitehead
United States District Judge